**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 2:25-cr-00076-JAW |
| KEVIN BELL | |

**GOVERNMENT'S MEMORANDUM REGARDING**
**DRAFT PRELIMINARY AND FINAL JURY INSTRUCTIONS**

The United States of America respectfully objects to the Draft Preliminary Jury Instructions and Draft Final Jury Instructions circulated on December 10, 2025. While preserving the objections and requests contained in its Trial Brief (Dkt. 100) and Motion in Limine Regarding Bell's Statements, Intrinsic Evidence, and Rule 404(b) Evidence (Dkt. 101), the government respectfully requests that the Draft Preliminary Jury Instructions ("Preliminary Instructions") and Draft Final Jury Instructions ("Final Instructions") be modified in several respects for the reasons stated in those pleadings and discussed below.

**OBJECTIONS**

**I.    PRELMINARY INSTRUCTIONS ON "DUTIES AS JURORS" AND "CREDIBILITY OF WITNESSES"**

The government respectfully reserves its objections to the inclusion of Bell's proposed "implicit bias" language in the instructions regarding "Duties as Jurors" and "Credibility of Witnesses." Understanding that the Court is overruling that objection, the government requests that the "implicit bias" language be removed from the "Credibility of Witnesses" instruction. The additional language is duplicative of the "implicit bias" language contained in the "Duties as Jurors" instruction. The additional language also

1

risks causing substantial confusion to the jury, as the "Credibility of Witnesses" instruction addresses "whether the witness has an interest in the outcome of the case or any motive, bias, or prejudice" as one factor the jury may consider in weighing witnesses' credibility.

## II. PRELIMINARY AND FINAL INSTRUCTIONS ON "COUNT ONE: THREAT AGAINST THE PRESIDENT"

### A. Preliminary and Final Instructions on the Elements

The government respectfully requests that the instructions regarding the elements in the Preliminary and Final Instructions be modified to state:

> In order for you to find Mr. Bell guilty of this crime, the Government must prove each of the following ~~two~~ <u>three</u> elements beyond a reasonable doubt:
>
> First, that Mr. Bell ~~intentionally~~ <u>knowingly and willfully</u> made the alleged statement;
>
> Second, that Mr. Bell<u>'s</u> ~~made a~~ statement contained a true threat to kill or injure President Trump; <u>and</u>
>
> Third, that Mr. Bell intended that the statement be taken as a true threat ~~against President Trump; and~~<u>.</u>
>
> ~~Fourth, that, under the circumstances in which the statement was made, a reasonable person would foresee that it would be understood by persons hearing it as a true threat to kill or injure President Trump.~~
>
> <u>A "threat" is a statement expressing an intention to kill or inflict bodily harm upon the President.</u>
>
> <u>A "true threat" is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would lead a reasonable person to believe that Kevin Bell intended to kill or inflict bodily harm upon the President.</u>
>
> <u>The Government does not have to prove that Mr. Bell intended to carry out the threat.</u>

*See* Preliminary Instructions at 3-4; Final Instructions at 8-9.

2

The government respectfully submits that the proposed first element in the Preliminary and Final Instructions—"that Mr. Bell intentionally made the alleged statement"—erroneously lowers the mental state the government must prove to convict Bell. Section 871 requires that a defendant act "knowingly and willfully" rather than "intentionally." *See* 18 U.S.C. § 871(a).

The government respectfully submits that the proposed fourth element in the Preliminary and Final Instructions—"that, under the circumstances in which the statement was made, a reasonable person would foresee that it would be understood by persons hearing it as a true threat to kill or injure President Trump"—does not accurately reflect the current state of the law. What constitutes a true threat does not look to whether "a reasonable person would foresee that it would be understood by persons hearing it as a true threat," Preliminary Instructions at 4. Rather, whether a statement constitutes a threat "depends not on the 'mental state of the author,' but on 'what the statement conveys' to the person on the other end." *Counterman v. Colorado,* 600 U.S. 66, 74 (2023) (*quoting Elonis v. United States,* 575 U.S. 723, 733 (2015)). As the Supreme Court observed in *Counterman,* "[w]hether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat . . . ." *Id.* (*citing Elonis,* 575 U.S. at 733). As explained in the government's Trial Brief and proposed jury instruction, the existence of a true threat looks instead to whether there is a serious threat "made under circumstances that would lead a reasonable person to believe that Kevin Bell intended to kill or inflict bodily harm upon the President." *See* Dkt. 100 at 7-8, 14; Dkt. 97 at 2. The Final Instructions correctly suggest this standard in the definition of a true threat. *See* Final Instructions at

3

11 ("It is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being injury [sic] herself, or of another person being injured.").

The proposed fourth element in the Preliminary and Final Instructions relies upon pre-*Elonis* and pre-*Counterman* cases in which the First Circuit observed that "[a] defendant may be convicted for making a threat if he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made," looking to "whether a reasonable person would understand the statement to be threatening." *See, e.g., United States v. Nishnianidze,* 342 F.3d 6, 16 (1st Cir. 2003) (citations omitted). There, facing a defendant charged with violating 18 U.S.C. §§ 875(b) and 875(c), the First Circuit spoke to the objective mental state necessary to convict a defendant of making a true threat, rather than what constitutes a true threat. *Id.; see also United States v. Fulmer,* 108 F.3d 1486, 1491 (1st Cir. 1997) ("We believe that the appropriate standard *under which a defendant may be convicted for making a threat* is whether he should have reasonably foreseen that the statement he uttered would be taken as a threat by those to whom it is made." (emphasis added)); *United States v. Clemens,* 738 F.3d 1, 8 (1st Cir. 2013), *overruled by Elonis,* 575 U.S. 723 ("since [*Virginia v.*] *Black* was decided in 2003 this court has continued to apply its objective defendant's vantage point test for determining intent in criminal threat cases." (*citing, inter alia, Nishnianidze,* 342 F.3d at 16)).

Post-*Elonis,* as a statutory matter, the mental state requirement of 18 U.S.C. § 875 "is satisfied if the defendant transmits a communication for the purpose of issuing a threat, or with knowledge that the communication will be viewed as a threat[.]" *Elonis,*

4

575 U.S. at 740-41. In *Counterman*, the Supreme Court concluded that, for a criminal charge regarding a true threat, the First Amendment requires proof that the defendant had some subjective understanding of the threatening nature of his statements. 600 U.S. at 69. Neither *Elonis* nor *Counterman* altered the First Circuit's recognition that "[a] true threat is one that a reasonable recipient familiar with the context of the communication would find threatening." *Nishnianidze,* 342 F.3d at 15 (*quoting United States v. Whiffen,* 121 F.3d 18, 20 (1st Cir. 1997)).

**B. Preliminary and Final Instructions on the First Amendment**

The government respectfully reserves its objections to the inclusion of an instruction regarding the First Amendment in this case. To the extent the jury might question why the law requires a true threat if Bell's counsel attempts to press upon them Mr. Bell's First Amendment rights, the government respectfully submits the best means to avoid confusion would be to preclude Bell's counsel from presenting questions of constitutional law—which are well beyond the jury's purview and are not an element of the offense—to the jury.

Should the Court overrule the objection, the government respectfully requests that the instruction regarding the First Amendment in the Preliminary Instructions and Final Instructions be modified to state:

> Section 871(a) is constitutional ~~on its face~~. The Nation has a valid, even an overwhelming, interest in protecting the safety of its Chief Executive and in allowing its Chief Executive to perform his duties without interference from threats of physical violence. At the same time, free speech in this country is protected by the First Amendment. This country has a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials, including the President. Even so, the First Amendment's protection of speech and expression does not extend to

threats of physical violence. To distinguish protected speech from criminalized speech *that is not protected by the First Amendment*, the law has developed the concept of true threat~~s~~. Under the law, a true threat is ~~a statement where the speaker means to communicate a serious expression of an intent to kill or injury President Trump. It is~~ a serious threat—not idle talk, a careless remark, or something said jokingly*—that is made under circumstances that would lead a reasonable person to believe that the speaker intended to kill or injure President Trump. True threats are outside the bounds of First Amendment protection and punishable as crimes.* One of the issues you will be asked to decide is whether Mr. Bell's statements ~~were protected speech or a~~ was a true threat. ~~The Government must prove beyond a reasonable doubt that Mr. Bell knowingly made a statement in such a way and under such circumstances that a reasonable person would foresee that the statement would be interpreted by persons hearing it as a serious expression of an intention to kill or inflict bodily harm upon the President.~~ The Government does not have to prove that Mr. Bell intended to carry out the threat.

     The government must prove that Mr. Bell ~~intentionally~~ *knowingly and willfully* made the true threat. To prove Mr. Bell acted ~~intentionally~~ *knowingly*, the government must prove beyond a reasonable doubt that Mr. Bell acted voluntarily and intentionally, not because of a mistake or accident. *To prove Mr. Bell acted willfully, the government must prove beyond a reasonable doubt that Mr. Bell acted voluntarily and purposely, with the intent to do something the law forbids; that is, with the bad purpose to disobey or disregard the law. While a person must have acted with the intent to do something the law forbids before you can find that the person acted "willfully," the person need not be aware of the specific law or rule that his conduct may be violating.*

     You should understand that what I have just given you is only a preliminary outline. At the end of the trial, I will give you final instructions on these matters. If there is any difference between what I have just told you and what I tell you in the instructions I give you at the end of the trial, the instructions given at the end of the trial govern.

*See* Preliminary Instructions at 4-5; Final Instructions at 9.

     The phrase "on its face" in the Preliminary and Final Instructions invites the jury to consider whether Section 871(a) may be unconstitutional as applied to Bell. The jury is entitled to decide questions of fact, rather than issues of constitutional law. Similarly, the phrase "were protected speech" invites the jury to consider complex questions of Constitutional law rather than the factual question of whether Bell's statement was a

true threat. A plurality of the Supreme Court has stated that "[t]he argument that the action of the trial court is erroneous, in declaring as a matter of law that such violation shows sufficient danger to justify the punishment despite the First Amendment, rests on the theory that a jury must decide a question of the application of the First Amendment. We do not agree." *Dennis v. United States,* 341 U.S. 494, 513 (1951). Moreover, the Supreme Court has unequivocally affirmed that true threats "are outside the bounds of the First Amendment's protection[.]" *Counterman,* 600 U.S. at 72-74 (examining restrictions permitted under the First Amendment since 1791, including restrictions on true threats of violence); *see also United States v. Walker,* 665 F.3d 212, 217 (1st Cir. 2011) ("The law is crystal clear that threats are not constitutionally protected speech."). The Supreme Court having established that true threats are not protected within the bounds of the First Amendment, it is the jury's role to answer the question of fact: whether Bell's statement can fairly be construed as a threat depending on the totality of the circumstances. *See, e.g., Walker,* 665 F.3d at 226; *Clemens,* 738 F.3d at 13 ("whether a statement constitutes a threat is an issue of fact for the trial jury" (cleaned up and citations omitted)); *United States v. Malik,* 16 F.3d 45, 51 (2d Cir. 1994) (absent "such an unusual set of facts [as found in *Watts v. United States*], however, existence *vel non* of a "true threat" is a question generally best left to a jury.").

   The addition of the phrase "that is not protected by the First Amendment" is necessary to avoid confusing the jury with the possibility that the government has criminalized speech that is protected by the First Amendment. As addressed above, that is a question for a court, rather than the jury, to decide.

In the circumstances of this case, the inclusion of definitions of "knowingly and willfully" ensures that the jury is instructed on the mental state required by 18 U.S.C. § 871(a).

The Preliminary and Final Instructions indicate that "the First Amendment's protection of free speech and expression does not extend to threats of physical violence" but does not explicitly state that "true threats" are "threats of physical violence" that are not protected by the First Amendment. The addition of the statement "True threats are outside the bounds of First Amendment protection and punishable as crimes"[1] makes that connection clear.

### C. Final Instruction on "Intent"

#### a. The applicable mental states.

The government respectfully requests that the following language be removed from the Final Instruction on "Intent":

> The government must prove that Mr. Bell intentionally made the true threat. To prove Mr. Bell acted intentionally, the government must prove beyond a reasonable doubt that Mr. Bell acted voluntarily and intentionally, not because of a mistake or accident. The phrase "with the intent" means that the government must prove beyond a reasonable doubt that Mr. Bell intended deliberate, conscious, or purposeful action, as opposed to causing a prohibited result through accident, mistake, carelessness, or absent-mindedness.
>
> The government may prove the requisite intent in the charged offense if Mr. Bell wanted his actions to be received as a true threat, knew that his actions would be viewed as a true threat, or consciously disregarded a substantial risk that his actions would be viewed as a true threat, meaning that he was aware that others could regard his communication as threatening violence but said it anyway.

Final Instructions at 10.

---

[1] "True threats of violence are outside the bounds of First Amendment protection and punishable as crimes." *Counterman,* 600 U.S. at 69.

As addressed above, the proposed first element in the Preliminary and Final Instructions—"that Mr. Bell intentionally made the alleged statement"—erroneously lowers the mental state the government must prove to convict Bell. Section 871 requires that a defendant act "knowingly and willfully" rather than "intentionally." *See* 18 U.S.C. § 871(a).

As to the second portion of the first paragraph, it is true that the First Amendment permits the government to convict a defendant in a true-threats case by proving "the defendant consciously disregarded a substantial risk that his communications would be viewed as threatening violence." *Counterman,* 600 U.S. at 69, 72-73. However, as a statutory matter, the government must prove Bell acted "knowingly and willfully" rather than "recklessly." It may well be that "knowingly and willfully" in the context of 18 U.S.C. § 871(a) permits conviction where a defendant "consciously disregarded a substantial risk that his actions would be viewed as a true threat, meaning that he was aware that others could regard his communication as threatening violence but said it anyway," Final Instructions at 10. However, given the absence of First Circuit precedent and in the particular circumstances of this case, the government submits that including *Counterman*'s recklessness standard in the instruction would present an unnecessary risk of appellate litigation.

### b. Direct knowledge of mental state.

The government respectfully requests the following modification to the second paragraph of the Intent instruction: "Intent, knowledge, *or willfulness* may not ordinarily be proven directly because there is no way of directly scrutinizing the workings of the human mind." *See* Final instructions at 10.

9

### c. The definition of "true threat."

The government respectfully requests that the following language be removed from the Final Instruction on "Intent":

> I mentioned the term, "true threat." Under the law, a true threat is a statement where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual. It is a serious threat—not idle talk, a careless remark, or something said jokingly—that is made under circumstances that would place a reasonable person in fear of being injury [sic] herself, or of another person being injured.

Final Instructions at 10.

As addressed above, the government respectfully submits that the second sentence does not accurately state the law. "Whether the speaker is aware of, and intends to convey, the threatening aspect of the message is not part of what makes a statement a threat . . . ." *Counterman,* 600 at U.S. 74 (*citing Elonis,* 575 U.S. at 733). Rather, the existence of a "true threat" looks instead to whether there is a serious threat "made under circumstances that would lead a reasonable person to believe that Kevin Bell intended to kill or inflict bodily harm upon the President." *See* Dkt. 100 at 7-8, 14; Dkt. 97 at 2.

The government further respectfully suggests that the definition of a "true threat" should be included in the elements instruction rather than an "Intent" instruction for clarity and to avoid confusion.

### III. FINAL INSTRUCTION ON "GENERAL RULES CONCERNING JURY DUTIES"

The government respectfully requests that the word "opinions" be removed from the sentence, "You must not be influenced by any personal likes, dislikes, <u>opinions</u>, prejudices, sympathies, or biases, including unconscious bias." *See* Final Instructions at

2. The word "opinions" does not appear in the Pattern Criminal Jury Instructions for the District Courts of the First Circuit, Instruction 3.01 (Feb. 6, 2024 ed.). Jurors are entitled and required to form opinions of witnesses' credibility and the evidence in order to properly participate in deliberations at the conclusion of the trial. The inclusion of "opinions" in this instruction will confuse jurors as to their ability to form opinions of witnesses' credibility and to draw upon their common sense and personal experiences. S*ee, e.g., id.* at Instruction 3.06; Final Instructions at 5. Its inclusion will also confuse jurors as to their duty to each decide the case for themselves, listen to the views of other jurors, to not be afraid to change their opinions, to not come to a decision simply because other jurors think it is right, and to not hesitate to reconsider their views when appropriate. *See, e.g.,* Pattern Criminal Jury Instructions for the District Courts of the First Circuit, Instruction 6.03 (Feb. 6, 2024 ed.); Final Instructions at 12.

Date: December 11, 2025  Respectfully submitted,

ANDREW B. BENSON
United States Attorney

BY: */s/ Nicholas Heimbach*
United States Attorney's Office
100 Middle Street, East Tower, 6th Floor
Portland, Maine 04101
(207) 780-3257
Nicholas.heimbach@usdoj.gov

## CERTIFICATE OF SERVICE

      I hereby certify that on December 11, 2025, I electronically filed the Government's Memorandum with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Caleigh Milton, Esq., and Grainne Dunne, Esq.
Counsel for Defendant

                                      ANDREW B. BENSON
                                      United States Attorney

BY:    */s/ Nicholas Heimbach*
          United States Attorney's Office
          100 Middle Street
          East Tower, 6th Floor
          Portland, Maine 04101
          (207) 780-3257
          Nicholas.heimbach@usdoj.gov